THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FRANCHIE L. ELLIS,<br><br>          Plaintiff,<br><br>v.<br><br>DR. SANTOS, DR. GARCIA, DR. PERCY MEYERS, DR. CALDWELL, PAM SESSION, SAMATHA V., and WEXFORD HEALTH SOURCES, INC.,<br><br>          Defendants. | Case No. 3:24-cv-02706-GCS |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Franchie L. Ellis, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Centralia Correctional Center ("Centralia"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Ellis's original Complaint against Dr. Santos and Dr. Garcia was dismissed without prejudice because the claims against them appeared to be barred by the applicable statute of limitations. Ellis was granted leave to file an amended pleading. In his Amended Complaint (Doc. 14), Ellis alleges that Dr. Santos and Dr. Garcia, as well as Dr. Percy Meyers, Dr. Caldwell, Pam Session, and Samatha V. were deliberately indifferent to his need for medical care, in violation of the Eighth Amendment. Ellis also alleges that Wexford Health Sources, Inc. ("Wexford") was deliberately indifferent to his need for medical care.

This case is now before the Court for preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

## THE AMENDED COMPLAINT

On September 28, 2015, Ellis was seen by Dr. Santos for complaints of pain related to a neck condition. (Doc. 14, p. 7). Ellis noted that he had difficulties with turning his head due to the state of his neck condition; he had to turn his entire body to turn his neck to see anything. *Id.* Dr. Santos issued him a bottom bunk permit and ordered x-rays. Through 2016, Ellis saw Dr. Santos on several occasions for his continuing issues with his neck. Dr. Santos merely stated that he would call Ellis back for follow-up care, but he never did. Ellis always had to put in sick call requests to be seen. He only received pain medication, a low bunk permit, and an x-ray, but no actual diagnosis or medical treatment for his condition. *Id.*

In April 2016, Dr. Santos ordered an x-ray. The findings showed a significant degree of reversal of cervical lordosis and advanced multilevel cervical spondylosis.

---

[1] The Court has jurisdiction to screen the Amended Complaint due to Plaintiff's consent to the full jurisdiction of a Magistrate Judge (Doc. 5), and the limited consent to the exercise of Magistrate Judge jurisdiction as set forth in the Memoranda of Understanding between this Court, the IDOC, and Wexford.

(Doc. 14, p. 8). Despite the radiology report, Dr. Santos still refused to provide any additional treatment. Ellis's condition continued to deteriorate to the point that he began to lose the use of his fingers due to his spinal cord pressing down on the nerves. His fingers also began to bend. *Id*.

On January 27, 2017, Ellis submitted a sick call slip to see a doctor for his pain medication. On February 1, 2017, he saw Dr. Garcia who referred him back to Dr. Santos for care. (Doc. 14, p. 8). On May 11, 2017, Ellis saw Dr. Santos, but Santos refused to send him to a specialist. By the time of the appointment, Ellis's condition was such that he could not lift his head up and his chin rested on his upper chest. *Id*. Dr. Santos merely prescribed Ellis more pain medications. On June 21, 2017, he asked Dr. Garcia for a referral to a specialist, but Garcia merely told Ellis he would have to learn to live with the condition. *Id*. at p. 8-9. During Ellis's annual physical on August 27, 2017, he again asked for a referral to a specialist. *Id*. at p. 9. Dr. Santos again denied the request.

Sometime in 2018, Ellis's spinal condition deteriorated to the point that he qualified as a disabled individual under the Americans with Disabilities Act ("ADA"). (Doc. 14, p. 9). He was provided with an ADA attendant to help him with daily tasks, but still no medical care was provided. In 2019, Ellis began seeing Dr. Meyers and Dr. Caldwell for his condition. He complained to them about his pain and his medical condition. *Id*. They too refused to send him to a specialist. Throughout 2020, he complained to Dr. Meyers and Dr. Caldwell on several occasions to no avail. *Id*.

Finally, in 2021, he was sent to Crossroads Medical Center to be examined by Dr. Mulhern. (Doc. 14, p. 9). Dr. Mulhern ordered an x-ray and an MRI and diagnosed Ellis

with Cervical Spondylosis with calcium buildup. *Id*. Ellis maintains this was the same findings as on the 2016 radiology report. *Id*. But the buildup had progressed and blocked the nerves controlling his hands and fingers. *Id*. Dr. Mulhern informed Ellis that his condition was treatable with surgery, but he would need to be referred to a specialist at St. Mary's Hospital in Centralia, Illinois. *Id*.

Ellis was referred to a neurologist who conducted additional testing. After meeting with the neurologist, however, Ellis alleges that there was a delay in a follow-up appointment due to the transitioning of staff at Centralia. The prison lacked a regularly assigned doctor, and the waiting list to see the doctor at the prison was long. By the time Ellis was referred to the neurologist, the MRI was too old to rely on for surgery, and another MRI was ordered. But Ellis alleges that nine months passed before he was scheduled for another MRI. Ellis alleges that the delay was caused by Pam Session, who was the individual in charge of scheduling at the prison. When she left her position in 2024, Ellis alleges that officials learned she had been hiding requested medical appointments that were years old. Ellis alleges that although he was supposed to be scheduled for an MRI earlier, Session hid the request and simply failed to schedule the appointment. *Id*.

After months of delay, Ellis finally received the MRI, but as of this date, he has still not been referred back to the neurologist. Ellis alleges it has been six months since his MRI without a scheduled appointment. He blames the delay in scheduling on Samatha V., the official at Centralia in charge of scheduling appointments outside of the prison. *Id*. at p. 10.

Ellis further alleges that delays in his care were caused by the policies and practices of Wexford Health Sources, Inc. (Doc. 14, p. 11). He alleges that Wexford had policies that limited staff's ability to pursue testing and treatment, encouraged staff to not trust inmate complaints and limit outside referrals, failed to hire doctors to provide medical care at the prison, and created policies that led to a backlog of patients and scheduling of care. *Id.*

## DISCUSSION

Based on the allegations in the Amended Complaint, the Court finds it convenient to divide the *pro se* action into the following counts:

> **Count 1:** **Eighth Amendment deliberate indifference to medical needs claim against Dr. Garcia, Dr. Santos, Dr. Meyers, and Dr. Caldwell for delaying and denying Ellis treatment for his neck condition.**
>
> **Count 2:** **Eighth Amendment deliberate indifference to medical needs claim against Pam Session and Samatha V. for delaying testing and referrals to the specialist to treat Ellis's condition.**
>
> **Count 3:** **Eighth Amendment deliberate indifference to medical needs claim against Wexford Health Sources, Inc. for establishing policies and practices that led to delays in Ellis's diagnosis and treatment.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Amended Complaint but not addressed in this Order should be**

**considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

At this stage, Ellis states a viable claim for deliberate indifference against Dr. Garcia, Dr. Santos, Dr. Caldwell, and Dr. Meyers in Count 1. Ellis's original Complaint was dismissed because he only alleged that he saw Dr. Santos and Dr. Garcia in 2017, and the claim appeared to be brought long after the expiration of the statute of limitations (Doc. 12, p. 4-5). But in his Amended Complaint, Ellis now alleges that the improper treatment provided by Dr. Garcia and Dr. Santos was part of a continuing violation of deliberate indifference that Ellis experienced while at Centralia. Ellis also filed a motion to reconsider (Doc. 13) arguing that officials at Centralia continued to deny him care and that he still has not received the proper treatment for his condition. His original Complaint, however, did not allege a continuing violation and was properly dismissed. Thus, Ellis's motion to reconsider (Doc. 13) is **DENIED**. But his Amended Complaint now alleges that he continued to suffer with his condition without treatment after his treatment by Dr. Garcia and Dr. Santos. Ellis alleges that he did not receive a referral to a specialist until 2021 and still has not received treatment and/or surgery to rectify his condition. Thus, at least at this stage, the Court finds that he can proceed on his claims against Defendants for deliberate indifference as he alleges a continuing violation. *See Heard v. Sheahan*, 253 F.3d 316, 318-319 (7th Cir. 2001).

---

[2] *See, e.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

Ellis also alleges a viable claim against Pam Session and Samatha V. in Count 2. He alleges that both officials delayed his referrals and testing due to their deliberate indifference. A delay in treatment can amount to deliberate indifference if the "delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *See Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012). Here, Ellis alleges that his condition has deteriorated, and he has had to have additional testing due to the delays in scheduling. Thus, Count 2 shall proceed against Pam Session and Samatha V.

Finally, Ellis states a viable claim against Wexford for its policies and practices that led to delays in Ellis's referral for outside care and necessary testing. Thus, Count 3 shall proceed against Wexford.

### DISPOSITION

For the reasons stated above, Count 1 shall proceed against Dr. Santos, Dr. Garcia, Dr. Percy Meyers, and Dr. Caldwell. Count 2 shall proceed against Pam Session and Samatha V. Count 3 shall proceed against Wexford Health Sources, Inc.

The Clerk of Court shall prepare for Dr. Santos, Dr. Garcia, Dr. Percy Meyers, Dr. Caldwell, Pam Session, Samatha V., and Wexford Health Sources, Inc.: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Ellis. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and

the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Ellis, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Because Ellis's claims involve his medical care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

If judgment is rendered against Ellis, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Ellis is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply

with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. PROC. 41(b).

**IT IS SO ORDERED.**

**DATED: July 25, 2025.**

*Digitally signed by Gilbert C Sison*
*Date: 2025.07.25 10:57:49 -05'00'*

**GILBERT C. SISON**
**United States Magistrate Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Amended Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**